Good morning, and may it please the Court. I'm Jerome Price, counsel for the appellant Ashley Thomas. I was one of two trial counsel below. Your Honor, I'll be mindful of my time, but I do intend to reserve three minutes for rebuttal. All right. There are two principal issues presented in this appeal. First, whether the government presented sufficient evidence to support the 11 convictions, that being conspiracy, conspiracy to commit structuring, conspiracy to commit money laundering, money laundering and structuring. I briefed those issues, Your Honor. For today's argument, I intend to limit my argument to structuring unless the panel has specific questions on the other issues. The second issue, Your Honor, is whether the court, the district court erred in admitting statements attributed to Sally and Pete under the co-conspirator exception. This was, this case, this appeal arises out of a jury trial that lasted four days. The trial evidence suggested that there was a large drug trafficking operation that was ran by an exclusive, close-knit, small group of individuals. Those individuals had clearly defined roles, that because of the small, because of the size of the group, there was not, they were not able to accomplish their objectives of transporting money from Florida to California to pay for marijuana that they intended to ship from Fresno to Florida. Is it your view that there were actually two separate conspiracies, one involving structuring and one involving a drug conspiracy? Yes. It's my view that there were two conspiracies, a structuring conspiracy, a money laundering conspiracy, actually three, and then a drug trafficking conspiracy. So you're addressing now the drug trafficking conspiracy? Yes. Well, there were, there were, what I'm saying is there were a small group of individuals who were in charge of, who ran the drug trafficking operation. And because there were a small group of individuals, they needed, they needed more people to accomplish their objectives of getting the money from Florida. I understand. Yeah. The structuring part. The structuring and money laundering part. Yes. And so in order to accomplish that task of getting money from Florida to California, this group of individuals needed to recruit other people to do that. And the way they did it was they recruited young women or other people to open bank accounts so that they can deposit money within those bank accounts and have them withdraw the money in California. That's actually structuring. Is that right? Well, our, well, our position is that it was not structuring, that at least on the end of the people who were withdrawing the money in California. The way you were laying out the facts seems to suggest it to me that you're, you're characterizing a structuring, structuring activity. Yes. Well, this was just as a logistical matter, this was just the way that the drug, the organization intended to pay for the marijuana in California. The problem that was presented in our case, in our theory at trial was that when they recruited other people, they were not transparent about their objectives, or at least they were not transparent about the fact that they were a drug trafficking organization. That the proceeds of this, the proceeds were from drug trafficking, specifically marijuana. And so, therefore, Ashley Thomas would not be, could not be convicted for money laundering because she would not, she didn't have any knowledge that the money was from drug trafficking. So it just seemed to me, I thought your better arguments might be on the structuring, but it just seemed to me that there was enough suspicious circumstances, and she knew there were money, she knew there was money from drugs, did she not? She did not. In your view, she did not? She did not. Does she have to know? For purposes of a structuring conviction? In purpose of a structuring conviction, no, she does not. But on the money, but on the drug conspiracy. On the money laundering. On the money laundering, the money laundering, when you add all this up, I guess the question is there enough that you can, that could be glued together from the government's point of view given the standard of review, and you say no. And I say no, and primarily because the nail in the coffin from our point of view was when the district court allowed statements from co-defendants that did not testify, those statements saying that Ashley Thomas was involved with receiving parcels of marijuana in Atlanta, and another statement saying that Ashley Thomas was involved with recruiting other people to use their bank accounts. Those statements were, severely prejudiced our defense, and I think that with those statements, the jury found that she did have the knowledge that the proceeds were from drug trafficking. So in your view, if we kicked out those co-conspirator statements, and they weren't there, that there wasn't sufficient evidence on the other? That is our view. Well, that may have some traction actually with regard to the statements, co-conspirator statements made, but I don't know that it necessarily links to the structuring. Structuring has, to me, is a totally independent activity. And in this case, I see that your client made 34 withdrawals totaling $200,000 in amounts just under $10,000 each, which seems to me purposefully flying under radar, avoiding detection, which suggests to me that she knew what she was doing. And if the jury is instructed with regard to circumstantial evidence and the inferences that you could make from circumstantial evidence, why couldn't they come to the conclusion that she knew that she was involved in a structuring operation? Because Ashley Thomas's role in this was that she was withdrawing money from the bank account. So there's a difference. I would think, I would submit we'd be in a different position if Ashley Thomas was the one who was making the deposits, because then there can be arguably circumstantial evidence that she, the reason that she made different deposits or deposits in amount will, A, first there would be circumstantial evidence that she would have knowledge that there was amount more than $10,000. But you can infer knowledge from the circumstances, can't you? She, well, our position is that she did not know. I understand. She did not know. She didn't pick the amounts. She didn't pick the amounts. She did not. But I think what Judge Fuentes is saying, she might not have picked them, but after I do one, two, three, and they're all kind of in the same ballpark, doesn't that potentially lead to an inference the jury could use for the conviction? No, Your Honor. The pattern of the transactions alone cannot support, should not support the structuring. When you're making withdrawals, you have no control over how much money is deposited, and you're simply liquidating an account, and this could be, it could have been $4,000. It could have been $2,000. You don't have to worry about the deposits. Structuring has to do with preventing the institution from knowing that, you know, that it has a reporting requirement. And if she is doing the withdrawals so as to not alert the banking institution that you have to make a report, doesn't that suggest that she had knowledge? Coupled with the fact that she made two separate trips to California from Florida with seemingly the purpose of making these under-$10,000 withdrawals. Now, this is the evidence before the jury. How do we tell — how do we say to the jury, you got it wrong on this circumstantial evidence? Because the circumstantial evidence that Your Honor mentions does not suggest that she had knowledge of a specific reporting requirement. In fact, the evidence here was even from — It's almost impossible to prove that. You prove that on the basis of circumstantial evidence. I mean, she didn't come forward and say, yeah, I knew what I was doing. Proving that is next to impossible. But knowledge, as you know, is proven by circumstantial evidence and inferences made. Your Honor, in the cases that deal with specifically the knowledge element on the concurrency transaction report and the reporting requirement, there is evidence that the defendants generally have had knowledge because either they've made huge deposits before and they've had to actually fill out a currency transaction report. There is evidence that the bank teller suggests to the defendant that if you deposit this amount of money, you're going to have to fill out a currency transaction report. There is no evidence that Mrs. Thomas had like knowledge or had opportunity to know about the reporting requirement. You might want to save your remaining 15 seconds. I would. Thank you. I'll give you a little extra. Thank you. May it please the Court, may I proceed? Yes. Vincent Tenerelli for the United States. Your Honors, the jury's decision to convict the defendant was rational based not only on the defendant's conduct in making withdrawals, but also in her attempts to explain that conduct in an inconsistent manner later. Because that decision was rational, under Nevels, it is entitled to deference. Moreover, the district court did not err when it admitted three statements through the government's witness, Miguel Gonzalez, because those statements were admissible under Rule 801 D2E and were reliable under Rule 403. I'm not sure, though. That's a totally different conspiracy that you're talking about, isn't it? I mean, how are they admissible? Your Honor, so I'd like to address. So, first of all, there are three statements at issue. The first statement was not objected to and so is subject to plain error review. This brings up a good point that was raised by defense counsel during argument, and that's this idea that there are two completely distinct operations going on here, a drug trafficking operation and then a money laundering operation. The evidence from trial showed that that was not the case. Specifically, the people that were engaged in the drug trafficking operation were also engaged in the money laundering operation. Specifically, the government's witness, Miguel Gonzalez, testified that he was recruited not only to acquire marijuana, but he was also recruited to use his own bank accounts to funnel money. There was also testimony at trial with respect to how much money specifically was structured through the bank accounts of each of the key players in the drug trafficking organization. These are people who were actively involved in trafficking drugs, and they're also funneling money through their account. So while there are multiple conspiracies, there is one drug trafficking operation here. Another important thing to think about, Your Honor, is the fact that a drug trafficking operation like this simply cannot operate if it can't move its money. May I ask you a question about how the jury addressed these issues? Was the jury asked to make separate findings on, for example, the verdict sheet with regard to the structuring and with regard to the conspiracy? Your Honor, there were separate counts for structuring and separate counts for conspiracy. Yes, so they were asked separately to find whether there was a conspiracy and whether Thomas was involved in the conspiracy. And they were asked separately about the structuring. Is that correct? Yes. They convicted the defendant on structuring conspiracy, money laundering conspiracy, money laundering and structuring. So, yes, they were asked. The answer to your question is yes. Was she involved in the – I mean, with regard to the jury verdict in the conspiracy, drug conspiracy? She wasn't charged with a drug conspiracy. Okay. She was only – she was only – Money laundering and structuring. That's correct. Okay. So on the structuring, I mean, to convict someone of structuring, they have to actually know of these banking requirements, correct? They have to know of the reporting requirements, yes. Reporting requirements. And then they have to intentionally avoid those requirements, correct? That is correct. So the real question, given the nature of the few things that she was involved in, is I'm having some trouble reconciling what she did with actual knowledge of the banking requirements. Because it may be that she knows she's doing something wrong, you know, by dealing with these people, but that's different than knowing that these banks have this reporting requirement and that she's skirting it. So I'd appreciate your comments on that. So this goes to, I think, what Judge Fuentes was discussing when he discussed how difficult it is to prove without circumstantial evidence that someone has knowledge of the reporting requirements. What we have here is two categories of evidence. We have pattern and we have other conduct that shows that she's trying to evade detection. Okay. So on the pattern, we have not only 34 transactions. We have her going to 28 different branches. Right. Pardon me? I said correct. So she's going all over California. Right. The fact that she's not all doing this at the same branch is a further, is further evidence that she's trying to keep from being detected. To me, that, I understand that. But to me, that just could mean that, you know, as I say, that she knows she's doing, that she knows that there are potentially drug money, which goes to the first issue, that there's drug money being spread around the United States and you don't want to put it all in one bank. But that doesn't, to me, signify the knowledge of this bank reporting requirement. That's where I'm having trouble. So there are two other pieces of evidence with respect to, that support her knowledge of the reporting requirement. So we have actual evidence in this case that when she's confronted by a bank teller, she's actually trying to evade detection at that point, because a bank teller is asking her about her transactions when she's in the middle of this spree of 34 different withdrawals. And she tells the bank teller that the reason she's withdrawing the money is that she's buying a car. That is not consistent with the other evidence. And it shows that when she's actually talking to the bank, she's trying to keep from being detected. But whether you're going to buy a car, a house, or more drugs, how does that link with the reporting requirement? Because if you're going to buy a car at a certain amount, I mean, that's the whole money laundering got into it because of car dealers, as you recall, way back. So I don't understand the connection there. Sure, Your Honor. So the inference from the fact that she says she's buying a car when she's in the She wasn't actually buying a car, is what the evidence shows. True. So that's showing that she doesn't want to get caught, that she's trying to keep the bank from detecting her activity. I also would like to point, Your Honor, to some statements by Miguel Gonzalez when he testified, because he stated he talked about his conversations with Peter Capodici, who was one of the primary players in this organization in California. And he testified that he was warned repeatedly never to exceed $10,000 because, as he said, he didn't want to alert IRS or any cop. So this is evidence of the way this organization operates, by warning people about not to go over $10,000. And what is the evidence that she was warned? The evidence that she was warned is — well, the evidence from Miguel Gonzalez is evidence of the way the organization operated by warning people. Right. But there's no evidence that links her to that warning, is there? The evidence that links her to the warning would be, again, her attempts to evade detection, but also under McPherson, a pattern of structuring alone is sufficient to show knowledge of the reporting requirement. And here we have a significant pattern of 34 withdrawals over a 22-day period. And under McPherson, that pattern alone is sufficient to show her understanding of the requirement. If there are — are there any further questions? It appears not. Thank you. Thank you. If you could please put a minute back on the clock. Thank you. I thought I would ask you, based on the comment made by your adversary here, regarding McPherson. Are you familiar with McPherson? Yes, Your Honor. You're familiar with its — the essential holding of the case that knowledge of an intent to avoid federal currency reporting requirements for cash transactions exceeding $10,000. The court there stated that the totality of the — totality of circumstantial evidence permitted the jury to infer McPherson's guilty knowledge and intent. So you can infer from overall totality of circumstances, not necessarily that specific evidence that she knew. That's how I understand McPherson. Can you talk about that? Yes. Well, McPherson, it's important to understand also that the — there was knowledge, specific knowledge about the currency transaction report in evidence. There was knowledge that the defendant had actually discussed the currency transaction report with the bank teller. Wasn't that part of this case? No, no. That knowledge was absent in this case. There was no, as Judge McKeown alluded to, there was no similar type of knowledge or opportunity for knowledge. The jury was not instructed that she could be found guilty of structuring if she evaded the $10,000 requirement. None of that was presented? I'm sorry. I missed the question. The jury was not instructed with regard to what was required, the essential elements of this offense? They were instructed on what the essential elements were. But the fact that the pattern alone is not sufficient. In fact, the Court mentions McPherson, but as recently as 2016, the Taylor decision walked that back because all the government had in that case was the pattern of transactions, and the Court said that's not enough. So it's contextual, and our argument here is that given that she's the person making the withdrawal, she's completely reacting to the situation. She's not doing anything proactive as it relates to the money. If it was $10, she would have withdrew $10. If it was $5,000, she would have withdrawn $5,000. And so our argument is that that's pretty much pattern is what the government's relying on, and in this case, in her role, that's not sufficient. Thank you. Thank you, Your Honor. Thank you. Thank both counsel for your argument this morning. United States v. Thomas is submitted. United States v. Bell is submitted on the brief, and we'll hear argument in United States v. Sanderson.
judges: Fuentes, Fernandez, McKeown